UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENVILLE

| | |
|---|---|
| RICKY UPCHURCH, as Executor of The Estate of JUANITA UPCHURCH, For the use and benefit of the next of kin of CLAYTON UPCHRUCH, ) ) ) ) ) | |
| Decedent, ) ) | |
| v. ) ) | No. 19-CV-00149 |
| NATIONAL RIFLE ASSOCIATION and LIFE INSURANCE COMPANY OF NORTH AMERICA, ) ) ) ) | |
| Defendant. ) | |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*, Defendants submit their Memorandum of Law in Support of their Motion to Dismiss. Defendants move the Court to dismiss all claims against them with prejudice because they are premature and barred by multiple, unambiguous provisions in the group accidental death insurance policy (the "Policy") under which the decedent, Clayton Upchurch ("Mr. Upchurch"), had coverage.

Plaintiff's claims are premature because Defendants' claims administrator never reached a decision on Plaintiff's claim for benefits. The claims administrator closed the claim after Mr. Upchurch's relatives and their attorneys failed to respond to its communications and provide the necessary information for its review. Therefore, Defendants did not breach Mr. Upchurch's contract or engage in deceptive trade practices.

Plaintiff's claims also are barred under the plain language of the Policy for four reasons. **First**, Plaintiff failed to file the present lawsuit within 3 years and 90 days of Mr. Upchurch's death

1

as required by the Legal Actions provision in the Policy.  **Second**, Plaintiff also waited nearly four years to provide proof of loss, which he was required to provide within 90 days under the Proof of Loss provision.  **Third**, since Mr. Upchurch's immediate cause of death was cancer, his death was not caused by a covered "Accident" as defined by his Policy that would entitle him to benefits, and **fourth** his death also is excluded from coverage by the sickness or disease exclusion.

Additionally, Plaintiff's Tennessee Consumer Protection Act ("TCPA") claim fails for multiple reasons.  It is time barred by the statue of limitations set forth in Tenn. Code Ann. §47-18-110.  It also does not comply with Rule 8 of the *Federal Rules of Civil Procedure* because Plaintiff makes merely a conclusory allegation.

Defendants represent that they have complied with the Court's Order Governing Motions to Dismiss, Doc. No. 7.  The parties have met and conferred regarding the present Motion.  The basis of this Motion cannot be cured by a permissible amendment, and Plaintiff has declined to dismiss the Complaint.  For the foregoing reasons, all of Plaintiff's claims must be dismissed with prejudice.

## I.  FACTS

The decedent enrolled for coverage under an accidental death insurance group policy NRA502002 issued to National Rifle Association (the "NRA"), the policy holder, that is fully insured by Life Insurance Company of North America ("LINA").  *See* Compl., ¶ 1, Doc. No. 1-1, PageID #6; Answer of LINA to Plaintiff's Am. Compl., Sixth Defense, Doc. No. 32; Policy attached as Exhibit A to LINA's Answer to Plaintiff's Am. Compl. (hereinafter referred to as "Policy"), Doc. No. 32-1.  The third-party claims administrator is AGIA.  *Id*. at ¶ 12.

2

Case 2:19-cv-00149-PLR-CRW   Document 37   Filed 01/27/20   Page 2 of 15   PageID #: 307

The decedent passed away on **August 22, 2014**. *See* Certificate of Death attached to Compl., Doc. No. 1-1, PageID# 15[1]. The Certificate of Death lists the "immediate cause" of death as "**Metastatic adenoid cystic carcinoma**." *Id*. (emphasis added). It lists the "OTHER SIGNIFICANT CONDITIONS – conditions contributing to death, **but not resulting in the underlying cause** given in Part 1" as "atherosclerotic cardiovascular disease and blunt force chest trauma due to motor vehicle collision." *Id*. (emphasis added).

![death certificate excerpt]

As shown below, the Certificate of Death also lets the corner choose whether the death was an accident, suicide, homicide, undetermined, or pending. *Id*. There is no option for natural causes. Here, the corner stated Mr. Upchurch's death was an "accident", most likely because it was the only remaining choice, considering Mr. Upchurch's death was not a suicide, homicide, undetermined, or pending.



An October 7, 2014 letter from the "Clark County Office of Coroner/Medical Examiner" also reports the immediate cause of death as "Metastatic Adenoid Cystic Carcinoma". *See* October 7, 2014 letter attached to Compl., Doc. No. 1-1, PageID# 16.

---

[1] Plaintiff also has attached these same documents to the Amended Complaint, Doc. No. 25, but for ease of reading, Defendants will only cite to the documents attached to the Complaint.

```
Name:                    Clayton Randolph Upchurch, Jr.
Date of Death:           8/22/2014
Case #:                  14-07876
Immediate Cause:         Metastatic Adenoid Cystic Carcinoma
Due to:
Other Significant Condition:  Atherosclerotic Cardiovascular Disease and Blunt Force Chest
                              Trauma due to Motor Vehicle Collision
Manner of Death:         Accident
```

Accordingly, Plaintiff has produced and relies on two documents that explicitly state the immediate cause of Mr. Upchurch's death was metastatic adenoid cystic carcinoma. Certificate of Death & October 7, 2014 letter, Doc. No. 1-1, PageID# 15-16. Plaintiff has not attached any contrary medical opinions about the cause of Mr. Upchurch's death to the Complaint or Amended Complaint. *See* Compl. & Am. Compl. Doc. Nos. 1-1 & 25. He also does not allege that another autopsy was performed, and one could not be performed at the present time because Mr. Upchurch was cremated. *Id.*; Certificate of Death, Doc. No. 1-1, PageID# 15.

Although the decedent died on **August 22, 2014**, Plaintiff did not initiate the processing for the claim of accidental death insurance benefits by submitting a claim form to Defendants until four years later on **November 10, 2018**. *See* Doc. No. 1-1, PageID# 15; Claim Form attached as Exhibit B to LINA's Answer to Plaintiff's Am. Compl. (hereinafter referred to as "Claim Form"), Doc. No. 32-2, PageID# 238-239. Neither Plaintiff's Complaint or Amended Complaint includes an allegation regarding why it took so long for Mr. Upchurch's relatives to submit proof of loss. *See generally*, Compl. & Am. Compl., Doc. Nos. 1 & 25.

A decision was never made on Plaintiff's accidental death insurance claim. *See* Claim File attached as Exhibit B to LINA's Answer to Plaintiff's Am. Compl. (hereinafter referred to as "Claim File"), Doc. No. 32-2, PageID# 287-290; Answer of LINA to Plaintiff's Am. Compl., ¶

4

12, Doc. No. 32.  The third-party administrator, AGIA, closed the claim without a decision because Plaintiff and his counsel failed to respond to AGIA's communications and, therefore, AGIA did not receive the necessary documentation requested to review the claim.  *Id*.  Instead of providing AGIA the information it needed and going through the claims process, Plaintiff filed the present lawsuit on July 1, 2019 to collect amounts he claims are allegedly owed under the Policy.  *Id*.; *see generally* Compl., Doc. No. 1-1.

The Policy contains several relevant and unambiguous provisions to the present action.  *See* Policy, Doc. No. 32-1.  The Policy explains that it will only pay benefits for deaths caused as a direct result from an accident **and no other cause**: "We will pay the applicable Principal Sum stated in the Schedule of Benefits if, within a year of an accident covered by the group policy, bodily injuries you suffer **as a direct result and from no other cause from that accident**, result in the loss of your life."  *Id*. at PageID# 229. (emphasis added).  The Policy defines "Accident" as "a sudden, unforeseeable external event which: (1) causes injury to you; and (2) **which is not contributed to by disease, sickness, mental or bodily infirmity.**"  *Id*. (emphasis added).  The language "no other cause" and "contributed to by" emphasized above is significant.  The Policy excludes coverage for deaths not only caused by but merely contributed to by disease or sickness.  The Policy explicitly states it does not cover deaths if one of the causes is a sickness or disease, regardless of the proximate cause.  In a similar vein, the Policy contains an exclusion for "8) sickness, disease, bodily or mental infirmity or medical or surgical treatment thereof, or bacterial or viral infection, regardless of how contracted."  *Id*. at PageID# 230.

The Policy also contains a Legal Actions provision, which states "No such action shall be brought more than 3 years … after the time written proof of loss is required to be furnished."  *Id*. at PageID# 231.  Under the Policy, written proof of loss must be provided within 90 days after the

loss: "Written proof, satisfactory to us, must be given to us within 90 days after the date of loss. If that is not reasonably possible, we will not deny or reduce any claim if proof is furnished as soon as reasonably possible." *Id*. at PageID# 230.

After Mr. Upchurch died, the "Proof of Loss" provision gave Mr. Upchurch's relatives 90 days to submit proof of loss to Defendants. *Id*. They did not meet this deadline. *See* Claim Form, Doc. No. 32-2, PageID# 238-239. Neither the Complaint nor the Amended Complaint includes an allegation regarding why Mr. Upchurch's relatives did not submit proof of loss within this time period or why they submitted proof as soon as reasonably possible. *See generally*, Compl. & Am. Compl., Doc. Nos. 1-1 & 25. After this 90-day period elapsed, Mr. Upchurch's relatives had three (3) years to bring the present action under the "Legal Actions" provision. Policy, Doc. No. 32-1, PageID# 231. Accordingly, Plaintiff's deadline to file suit was November 20, 2017. Again, they did not meet this deadline. In fact, Plaintiff did not file suit until nearly two years later on July 1, 2019. *See generally* Compl., Doc. No. 1-1.

## II.     STANDARD OF REVIEW

Rule 12(b)(6) allows dismissal if a plaintiff "[fails] to state a claim upon which relief may be granted." F.R.C.P. 12(b)(6). "A motion to dismiss for failure to state a claim requires the court to evaluate whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action." *Stanley v. City of Norton*, 124 Fed. Appx. 305, 309 (6th Cir. 2005). However, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007). The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Kottmyer v. Maas,* 436 F.3d 684, 689 (6th Cir. 2006). Merely pleading facts that are consistent with a defendant's liability or that permit the court to infer misconduct is insufficient. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). The

plaintiffs must "plead . . . factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. In addition to the allegations in the complaint and without converting the Fed. R. Civ. P. 12(b)(6) motion to dismiss into a motion for summary judgment, the Court "may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Mgt. Co., Inc. v. Telxon Corp.,* 413 F.3d 553, 560 (6th Cir. 2005). When reviewing a motion to dismiss Rule 12(b)(6), the Court must dismiss the claim if, taking Plaintiff's well-pleaded allegations as true and resolving all reasonable inferences in its favor, Plaintiff fails to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), 556 U.S. at 678.

Since jurisdiction is based upon diversity, Tennessee substantive law applies.

### III.     ARGUMENT

Plaintiff's claims against Defendants should be dismissed with prejudice because they are premature and barred by several, unambiguous provisions in the Policy. Plaintiff's TCPA claim also fails as a matter of law for multiple reasons.

   A. **PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE DEFENDANTS DID NOT BREACH A CONTRACT WITH PLAINTIFF OR ENGAGE IN DECEPTIVE TRADE PRACTICES.**

Plaintiff's Complaint should be dismissed because it is premature. To establish a breach of contract, a plaintiff must show "1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused by the breached contract." *Arch Wood Prot., Inc. v. Flamedxx, LLC*, 932 F. Supp. 2d 858, 866 (E.D. Tenn. 2013) (citing *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co.*, S.W.3d 2011 Tenn. App. LEXIS 515, 2011 WL 4416561, at *5 (Tenn. Ct. App. Sept. 23, 2011)) (internal quotation marks omitted). Here, Plaintiff

7

cannot establish that Defendants breached the decedent's contract because Defendants' third-party administrator never made a decision on Plaintiff's claim. *See* Claim File, Doc. No. 32-2, PageID# 287-290. The third-party administrator, AGIA, closed the claim without a decision because Mr. Upchurch's relatives and their counsel failed to respond to AGIA, and, therefore, AGIA did not receive the necessary documentation requested to review the claim. *Id*. Instead of providing AGIA the information it needed and going through the claims process, Plaintiff filed the present lawsuit. *Id*.; *see generally* Compl., Doc. No. 1-1.

Equating closing the claim for failure to provide information to a breach of contract would entitle Plaintiff to end run the claims process, subject Defendants to unnecessary attorneys' fees, and waste judicial resources. Additionally, Plaintiff has delayed any potential award of benefits by filing suit instead of following the claims process. Plaintiff should be required to at least participate in claims process like other claimants and allow Defendants the opportunity to investigate and make a determination on Plaintiff's claim prior to filing suit.

Plaintiff also alleges in his Complaint that "the defendant is guilty of deceptive trade practices all of which are in violation of Consumer Protection Act of the State of Tennessee." *See* Compl. & Am. Compl. ¶14, Doc. Nos. 1-1 & 25. As with his breach of contract allegation, Plaintiff cannot establish that Defendants engaged in deceptive trade practices because Defendants never reached a decision on Plaintiff's claim.

    **B.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS BARRED BY SEVERAL PROVISIONS OF THE POLICY.**

In the event the Court determines Plaintiff's claims are ripe, which Defendants contest, they are barred by several provisions in the Policy.

First, Plaintiff's Complaint should be dismissed because Plaintiff failed to comply with the Legal Actions provision, which limits the time in which a lawsuit may be filed. In fact, the Policy

8

Case 2:19-cv-00149-PLR-CRW   Document 37   Filed 01/27/20   Page 8 of 15   PageID #: 313

required Plaintiff to bring suit nearly two years before this case was filed. "Tennessee has long held that an insurance policy provision establishing an agreed limitations period within which suit may be filed against the company is valid and enforceable." *Brick Church Transmission, Inc. v. S. Pilot Ins. Co.*, 140 S.W.3d 324, 329 (Tenn. Ct. App. 2003) (citing *Guthrie v. Conn. Indem. Ass'n*, 101 Tenn. 643, 49 S.W. 829, 830 (Tenn. 1898); *Hill v. Home Ins. Co.*, 22 Tenn. App. 635, 125 S.W.2d 189, 192 (Tenn. Ct. App. 1938)). The Tennessee Supreme Court "has held that where such policy also contains a provision for a settlement period after the loss during which the insured is prohibited from bringing suit under the policy, the commencement of the limitation period is extended until the expiration of the settlement immunity period." *Id.* (citing *Boston Marine Ins. Co. v. Scales*, 101 Tenn. 628, 49 S.W. 743, 747 (Tenn. 1898)). In contrast, if "the insurance company affirmatively denies the insured's claim before the expiration of the settlement of loss immunity period, the contractual limitation of actions provision commences to run upon the date of such denial." *Id.* (citations omitted).

Here, the Legal Actions provision in the Policy establishes a 60-day immunity period and a 3 year contractual limitation period after the time written proof of loss is required: "No action at law or in equity shall be brought to recover benefits under the group policy less than 60 days after written proof of loss has been furnished as required by the group policy. No such action shall be brought more than 3 years … after the time written proof of loss is required to be furnished." *See* Policy, Doc. No. 32-1, PageID# 231. Written proof of loss must be provided within 90 days after the loss: "Written proof, satisfactory to us, must be given to us within 90 days after the date of loss. If that is not reasonably possible, we will not deny or reduce any claim if proof is furnished as soon as reasonably possible." *Id.* at PageID# 230. Since the decedent passed away on **August 22, 2014**, Plaintiff was required to file suit within 3 years and 90 days or **November 20, 2017**.

9

Under Tennessee law, Plaintiff could argue that date should be extended by the immunity period of 60 days to **January 19, 2018,** since AGIA did not made a decision on the claim. Plaintiff, however, did not file the present action until **July 1, 2019**, well after November 20, 2017 or January 19, 2018. *See* Compl., Doc. No. 1-1. Accordingly, Plaintiff's Complaint is time barred and should be dismissed with prejudice.

Second, Plaintiff's Complaint should be dismissed because Plaintiff failed to comply with the "Proof of Loss" provision, which requires written proof of loss within 90 days: "Written proof, satisfactory to us, must be given to us within 90 days after the date of loss. If that is not reasonably possible, we will not deny or reduce any claim if proof is furnished as soon as reasonably possible." *See* Policy, Doc. No. 32-1, PageID# 230. Here, the decedent passed away on **August 22, 2014**, and Plaintiff does not allege in the Complaint or Amended Complaint why he failed to submit proof of loss within 90 days. *See generally* Compl. & Am. Compl., Doc. Nos. 1-1 & 25. Therefore, under the Proof of Loss provision, Plaintiff was required to provide satisfactory, written proof of loss by **November 20, 2014**. Plaintiff, however, did not initiate the processing for the claim of benefits by submitting a claim form until **November 10, 2018**, nearly four years after the proof of loss deadline. *See* Claim Form, Doc. No. 32-2, PageID# 238-239.

While Defendants acknowledge this is an insurance contract, waiting four years to file proof of loss for an accidental death claim that occurred across the country indisputably prejudices Defendants. The decedent's wife has now passed away. Due to the significant passage of time, Defendants may not be able to track down witnesses or health care providers. Even if they are located, their memories will have faded. Moreover, medical records could have been lost or destroyed all preventing Defendants from performing a thorough investigation. While Defendants are sympathetic to the passing of the decedent, beneficiaries should not be permitted to wait four

years to submit proof of loss for accidental death coverage. These claims require prompt investigations in order to obtain the most accurate witness statements and records. Accordingly, Plaintiff's Complaint should be dismissed with prejudice as time barred.

Finally, Plaintiff's claims are barred by the Policy's definition of coverage for accidental loss of life and by the exclusion for "sickness, disease, bodily or mental infirmity or medical or surgical treatment thereof, or bacterial or viral infection, regardless of how contracted." *See* Policy, Doc. No. 32-1, PageID# 229-230. Under the Policy, benefits are only payable if an insured dies as a direct result from an Accident and no other cause: "We will pay the applicable Principal Sum stated in the Schedule of Benefits if, within a year of an accident covered by the group policy, bodily injuries you suffer as a direct result **and from no other cause from that accident**, result in the loss of your life." *Id*. at PageID# 229 (emphasis added). Under the Policy, "Accident" is an event that results **independent of a disease or sickness**: "a sudden, unforeseeable external event which: (1) causes injury to you; and (2) which is not contributed to by disease, sickness, mental or bodily infirmity." *Id*. Similarly, the Policy contains an exclusion for "8) sickness, disease, bodily or mental infirmity or medical or surgical treatment thereof, or bacterial or viral infection, regardless of how contracted." *Id*. at PageID# 230. As indicated above, the plain language of the Policy excludes coverage for deaths that are not solely caused by an Accident *i.e.* deaths not only caused by but merely contributed to by disease or sickness. *Id*. at PageID# 229. Thus, if a death has multiple causes and one is a disease or sickness, it is not covered.

The Certificate of Death Plaintiff attached to his original Complaint and Amended Complaint explicitly identifies the immediate cause of the decedent's death as cancer, specifically, metastatic adenoid cyst carcinoma. Certificate of Death, Doc. No. 1-1, PageID# 15. The other significant conditions contributing to death **but not resulting in the underlying cause** were

atherosclerotic cardiovascular disease and blunt force trauma due to motor vehicle collision. *Id*. Similarly, Plaintiff also attached the coroner's report to his Complaint and Amended Complaint. Compl., Doc. No. 1-1, PageID# 16. The coroner also explicitly stated the "immediate cause" of Mr. Upchurch's death was "metastatic adenoid cystic carcinoma." *Id*. The coroner stated that Mr. Upchurch's death was attributable to two other significant conditions: atherosclerotic cardiovascular disease, and blunt force chest trauma due to motor vehicle collision. *Id*. Thus, by Plaintiff's own admission, Mr. Upchurch's immediate cause of death was cancer, and since the immediate cause of his death was cancer, his death was caused by disease or sickness and not solely from the motorcycle accident. As indicated above, the Policy only pays benefits for deaths an insured suffers as a direct result from an accident and no other causes. *Id*. at PageID# 229 (emphasis added). Therefore, it fails to meet the definition of a covered death and is excluded from coverage under the exclusion for sickness or disease. Because Mr. Upchurch's death was not a covered death, he is not entitled to benefits under the Policy, and Plaintiff's Complaint should be dismissed with prejudice.

### C. PLAINTIFF'S TCPA CLAIM IS BARRED FOR MULTIPLE REASONS.

There are multiple reasons why Plaintiff's Tennessee Consumer Protection Act fails as a matter of law. Plaintiff alleges in his Complaint that "the defendant is guilty of deceptive trade practices all of which are in violation of Consumer Protection Act of the State of Tennessee." *See* Compl. & Am. Compl., Doc. Nos. 1-1 & 25, ¶ 14. As demonstrated above, Defendants did not act unfairly or deceptively. In fact, Defendants never reached a decision on Plaintiff's claim. *See* Claim File, Doc. No. 32-2, PageID# 287-290; Answer of LINA to Plaintiff's Am. Compl., ¶ 12, Doc. No. 32. Therefore, Plaintiff's TCPA claim must fail.

12

Case 2:19-cv-00149-PLR-CRW   Document 37   Filed 01/27/20   Page 12 of 15   PageID #: 317

Additionally, Plaintiff's TCPA claim fails because it is not compliant with Rule 8 of the *Federal Rules of Civil Procedure*. Plaintiff's claim must be dismissed because it is nothing more than a conclusory statement, which is insufficient under Rule 8. F.R.C.P. 8(a). "[Rule 8 requires] more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.' In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level' and to 'state a claim to relief that is plausible on its face.' 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Peoples v. Bank of Am.*, 2012 WL 601777, at *3 (W.D. Tenn. 2012). Here, Plaintiff plead no facts to show how or why Defendants engaged in deceptive trade practices, and, therefore, Plaintiff's claim is barred under Rule 8.

However, even if Plaintiff had provided more than a bare legal assertion to support this claim, the claim would nevertheless be barred by the applicable statute of limitations. *See* Tenn. Code Ann. § 47-18-110. The statute of limitations on a TCPA claim is one (1) year from the date that a person discovers the unlawful act or practice. Tenn. Code Ann. § 47-18-110. Under the discovery rule, a TCPA cause of action accrues and the statute of limitations begins running "when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *Montesi v. Nationwide Mut. Ins. Co.*, 970 F. Supp. 2d 784, 789 (W.D. Tenn. 2013).

Here, Plaintiff's TCPA claim arose as early as 2014, but in no event later than 2016 because it appears to be based on facts, Mr. Upchurch's death, about which Plaintiff knew or should have known as early as 2014, but in no event later than 2016 had Plaintiff complied with the Proof of Loss requirement in the Policy. If, as Plaintiff alleges, he "gave proper notice as required by said

13

policy of insurance and complied in all particulars with the terms and conditions of the policy," he would have submitted proof of loss by **November 20, 2014** (90 days after Mr. Upchurch's death). Am. Compl., Doc. No. 25, ¶ 11. It would have been apparent to Plaintiff shortly thereafter in either late 2014 or 2015 that LINA either paid or denied his claim. If LINA denied the claim and he believed the non-payment was due to deceptive trade practices, his claim then would have accrued at some point in 2014 or 2015. Then, he would have had one year from that time to file in present lawsuit – either 2015 or 2016 at the latest. Plaintiff, however, waited more than three years beyond the date he should have known his TCPA claim accrued to file the present lawsuit on July 1, 2019. Even taking the most liberal view of the facts, this was still two years late. Plaintiff's TCPA claim is time-barred and, therefore, he should not be entitled to any recovery.

## IV. CONCLUSION

Plaintiff's claims against Defendants should be dismissed with prejudice because Plaintiff's claims are premature and barred numerous, unambiguous provisions in the Policy. Additionally, Plaintiff's TCPA claim is time barred by Rule 8 of the FRCP and the statue of limitations.

Respectfully submitted,

**ROBINSON, SMITH & WELLS, PLLC**

By:  s/Marcie K. Bradley
Marcie K. Bradley, #028222
633 Chestnut Street, Suite 700
Chattanooga, TN  37450-1801
(423) 665-9529
mbradley@rswlaw.com
*Counsel for Defendants*

14

## CERTIFICATE OF SERVICE

  I hereby certify that on January 27, 2020, a copy of the foregoing Memorandum in Support of Motion to Dismiss was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

    R. Wayne Culbertson, Esq.
    Joseph W. McMurray, Esq.
    119 W. Market Street
    Kingsport, Tennessee 37660

      **ROBINSON, SMITH & WELLS, PLLC**

    By: s/Marcie Kiggans Bradley