UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENVILLE

| | |
|---|---|
| RICKY UPCHURCH, as Executor of The Estate of JUANITA UPCHURCH, For the use and benefit of the next of kin of CLAYTON UPCHRUCH, </br></br>Decedent, </br></br>v. </br></br>NATIONAL RIFLE ASSOCIATION and LIFE INSURANCE COMPANY OF NORTH AMERICA, </br></br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 19-CV-00149 |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*, Defendants submit their Reply in Support of their Motion to Dismiss ("Motion"). Plaintiff's Response to Defendants' Motion to Dismiss, Doc. No. 40, ("Response") fails to preserve Plaintiff's claims from being dismissed with prejudice. Rather, Plaintiff's Response actually supports Defendants' position that Plaintiff has failed to state a claim upon which relief can be granted and, therefore, all of Plaintiff's claims should be dismissed with prejudice.

In his Response, Plaintiff admits multiple times that the immediate cause of Mr. Clayton Upchurch's ("Mr. Upchurch") death was metastatic adenoid cystic carcinoma. This admission alone requires dismissal of Plaintiff's claims because the plain and unambiguous terms of his accidental death insurance group policy NRA502002 ("Policy") only covers deaths ***solely*** caused by an Accident and specifically excludes deaths ***caused or contributed*** to by disease or sickness.

1

Since Plaintiff admits the immediate cause of Mr. Upchurch's death was cancer, his death is not covered under the Policy. This is dispositive.

The case law Plaintiff cites further illustrates and supports Defendants' position. When applied to the present facts, this case law requires the Amended Complaint to be dismissed.

Plaintiff's Response also fails to save his claims from being considered premature and barred by the Policy's Proof of Loss and Legal Actions provisions by relying on incorrect or unsupported allegations *outside* of the pleadings. The case law is clear and Plaintiff even admits that allegations or facts outside the pleadings may not be considered. Moreover, many of Plaintiff's allegations are naked assertions devoid of further factual enhancements, which are insufficient to prevent dismissal of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Finally, Plaintiff fails to rebut Defendants' argument that his Tennessee Consumer Protection Act ("TCPA") claim is barred by the statute of limitations set forth in Tenn. Code Ann. §47-18-110 and also does not comply with Rule 8 of the *Federal Rules of Civil Procedure*. Plaintiff incorrectly relies on allegations of fraud, which Defendants deny, not made in Plaintiff's Complaint or Amended Complaint, which similarly may not be considered in response to Defendants' Motion.

For all of these reasons, Defendants' Motion should be granted, and Plaintiff's claims should be dismissed with prejudice.

## I. PLAINTIFF'S ADMISSIONS CONFIRM MR. UPCHURCH'S DEATH IS NOT COVERED UNDER HIS POLICY, AND HIS CLAIMS SHOULD BE DISMISSED.

Plaintiff admits that the immediate cause of Mr. Upchurch's death was metastatic adenoid cystic carcinoma. Doc. No. 40, PageID #330, 331, 340. This admission alone warrants dismissal of Plaintiff's claims with prejudice because the plain and unambiguous terms of his Policy only cover deaths solely caused by an Accident and specifically exclude deaths caused or contributed

2

Case 2:19-cv-00149-PLR-CRW   Document 42   Filed 02/12/20   Page 2 of 14   PageID #: 368

to by disease or sickness: "We will pay the applicable Principal Sum stated in the Schedule of Benefits if, within a year of an accident covered by the group policy, bodily injuries you suffer *as a direct result and from no other cause from that accident*, result in the loss of your life." *See* Policy, Doc. No. 32-1, at PageID# 229. (emphasis added). The Policy defines "Accident" as "a sudden, unforeseeable external event which: (1) causes injury to you; and (2) *which is not contributed to by disease, sickness, mental or bodily infirmity.*" *Id*. (emphasis added). The Policy excludes deaths "caused by or resulting from" … "8) sickness, disease, bodily or mental infirmity or medical or surgical treatment thereof, or bacterial or viral infection, regardless of how contracted." *Id*. at PageID# 230. Since Plaintiff admits the coroner determined the immediate cause of Mr. Upchurch's death was cancer, his death is not covered under the Policy.

While Plaintiff attempts to preserve his claim by arguing the coroner also listed the motorcycle accident as an "OTHER SIGNIFICANT CONDITIONS – conditions contributing to death", this is immaterial and a distraction from the merits. In order to be covered under the Policy, the death must be suffered as a direct result of the Accident and from no other cause than the Accident. *See* Policy, Doc. No. 32-1, at PageID# 229. Here, since Plaintiff has admitted that cancer was at least one cause of Mr. Upchurch's death, the fact that the motorcycle accident may have been another significant condition contributing to death, does not alter the fact that his death was not covered. Since Mr. Upchurch's death was caused, even if in part, by his cancer, his death was not independent of sickness or disease. Under the clear terms of the Policy, this means that Mr. Upchurch's death was not covered and subject to exclusion under the Policy.

Although inconsistent with his admission that cancer was the immediate cause of Mr. Upchurch's death and argument that the motorcycle accident contributed to his death, later in his Response, Plaintiff also attempts to argue that "the injuries Mr. Upchurch sustained in the

3

motorcycle incident did cause his death and is certainly the sole cause of his death, independent of all other causes." Doc. No. 40, PageID# 340. This is pure, unsupported speculation that directly contradicts the two medical opinions from the coroner Plaintiff attached to his Complaint and Amended Complaint, definitively stating Mr. Upchurch's cancer was the immediate cause of death. *See* Certificate of Death attached to Compl., Doc. No. 1-1, PageID# 15[1]; *See* October 7, 2014 letter attached to Compl., Doc. No. 1-1, PageID# 16.

He also attempts to save his claim by relying on the coroner's listing the death as an accident. Considering he admitted Mr. Upchurch's immediate cause of death was cancer, this also is immaterial and a distraction from the merits because the Policy only covers deaths solely caused by an Accident and specifically excludes deaths caused or contributed to by disease or sickness. The coroner's code does not alter this language in the Policy. Regardless, Plaintiff does not acknowledge that the only other code choices were suicide, homicide, undetermined, or pending. *Id*. The form contained no option for natural causes or disease/sickness. Here, the coroner coded Mr. Upchurch's death as an "accident", most likely because it was the only remaining choice, considering Mr. Upchurch's death was not a suicide, homicide, undetermined, or pending.

Plaintiff also alleges that, following the motorcycle crash, Mr. Upchurch "was transported to the St. Rose Hospital via emergency medical services where he was treated and released the same day after doing some testing." Doc. No. 40, PageID# 330. Plaintiff cites to Exhibit A to his Amended Complaint in support of this allegation. *Id*. Exhibit A to the Complaint is a copy of the Accident Report, which says nothing about Mr. Upchurch's care following the motorcycle accident. *See* Doc. No. 29-1. Plaintiff also did not send these records to Defendants in support of

---

[1] Plaintiff also has attached these same documents to the Amended Complaint, Doc. No. 25, but for ease of reading, Defendants will only cite to the documents attached to the Complaint.

4

his claim and, therefore, do not appear in the claim file. *See* Claim File attached as Exhibit B to LINA's Answer to Plaintiff's Am. Compl. (hereinafter referred to as "Claim File"), Doc. No. 32-2. Therefore, these allegations are matters outside of the pleadings, which cannot be considered in response to Defendants' Motion.[2] *See e.g. Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1280 (C.D. Cal. 2016) ("As a general rule, parties can't present (and courts can't consider) evidence outside of the complaint when deciding a Rule 12(b)(6) motion to dismiss"); *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) ("When reviewing a motion to dismiss, a district court may not consider matters beyond the complaint.") (citing *Kostrzewa v. City of Troy,* 247 F.3d 633, 643 (6th Cir. 2001) (citing 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed. 2000))). However, even if the medical records were before the Court, it would not change the fact that other documents attached to the Complaint state that Mr. Upchurch's immediate cause of death was determined to be cancer, which makes Plaintiff ineligible to receive benefits under the Policy.

## II. PLAINTIFF'S CASE LAW SUPPORTS DEFENDANTS' MOTION TO DISMISS.

The case law Plaintiff cites in his Response requires the Complaint to be dismissed. These cases stand for the general rule that an insurance company is ***not*** obligated to pay benefits under an accident insurance policy where "the insured, at the time of the accidental injury, was ***suffering from a disease or infirmity which proximately caused…disability or death***." *Hodges v. Valley Forge Life Ins. Co.*, 486 S.W.2d 544, 547 (Tenn. Ct. App. 1971) (emphasis added) (Plaintiff cited at Doc. No. 40, PageID# 338). In other words, an insurer is ***only*** required to pay benefits under an accident insurance policy where the accident is "the ***sole***, proximate cause of the bodily injury."

---

[2] Plaintiff admits Mr. Upchurch was released from the hospital the same day he arrived after his motorcycle accident, Doc. No. 40, PageID# 330, which suggests Mr. Upchurch's alleged injuries from the accident were not serious enough to warrant concern.

5

*Talley v. Travelers Ins. Co.*, Tenn. App. LEXIS 2796, at *7 (Tenn. Ct. App. July 10, 1987) (citing *Parker v. Provident Life & Accident Ins. Co.*, 582 S.W.2d 380, 384 (Tenn. 1979)) (emphasis added). Stated differently "the insurer has not contracted to provide coverage when an active combination of a pre-existing disease and an accidental injury are required to produce death." *Metro. Life Ins. Co. v. Smith*, 554 S.W.2d 123, 128 (Tenn. 1977).

In *Parker v. Provident Life and Acc. Ins. Co.*, 582 S.W.2d 380 (Tenn. 1979), the Tennessee Supreme Court reiterated an earlier holding in *Metro. Life Ins. Co. v. Smith*, 554 S.W.2d 123 (Tenn. 1977), that, if an accident insurance policy expressly excludes losses caused by disease, the insured party is not entitled to payment where disease was a proximate cause of the loss. *Id.* at 383. "In order for bodily infirmity or disease of an insured who suffers an accidental injury to preclude coverage under a policy which excludes losses 'caused directly or indirectly, wholly or partly' by such infirmity or disease, it must be shown that the bodily infirmity or disease was a proximate cause of the loss." *Id.* In *Parker*, the plaintiff's leg was amputated after stepping on a nail and contracting gangrene. *Id.* at 381. The insurer declined coverage because Mr. Parker did not discover his injury quickly due to diminished sensation in his foot caused by diabetes and arteriosclerosis. *Id.* at 382.

The Tennessee Supreme Court declined to dismiss the Complaint based on medical evidence that markedly contrasted from *Smith* and the present case. The treating physician in *Parker*, Dr. Simmons, who supplied the only medical evidence, testified that the nail puncture wound to the plaintiff's foot "was the direct cause of the amputation." *Id.* at 384. "Moreover, Dr. Simmons expressly declined to state that the nail puncture wound would not have caused the amputation of the plaintiff's leg if he had not been suffering from diabetes and arteriosclerosis." *Id.* In contrast, the only medical evidence in the present case states that the immediate cause of

6

Mr. Upchurch's death was cancer. The motorcycle accident was merely an "other significant condition contributing to death".

In *Talley v. Travelers Ins. Co.*, 1987 WL 13455 (Tenn. Ct. App. 1987), the court found the ***insurance company was entitled to a directed verdict*** under the accident insurance policy's exclusionary clause where there was "a causal connection between [the insured's] heart condition and his death." *Id*. at *4. Likewise, in *Tully v. Mass. Mut. Life Ins. Co.*, 1997 WL 187395 (6th Cir. 1997), the court found the ***insurance company was entitled to summary judgment*** under the accident insurance policy's exclusionary clauses, holding "coverage is excluded where 'death results directly or indirectly from disease or medical or surgical treatment therefor.'" *Id*. at *8. Citing *Smith*, the Sixth Circuit explicitly stated "coverage is denied if a preexisting disease or medical condition 'contribute[s] in an active and measurable degree to the death.'" *Id*. at *7.

Finally, in *N. Am. Ins. Co. v. Ellison*, 267 S.W.2d 115 (Tenn. Ct. App. 1954), the court held that an insurance company may be held liable under an accident insurance policy where "disease…merely furnished a condition causing death to follow from a chain of events set in motion by the accident." *Id*. at 117. However, *Ellison* made sure to distinguish its facts from cases in which a disease, rather than an accident, was identified as the primary cause of death. *Id*. at 118. The *Ellison* court cited *Wheelock v. Provident Life & Acc. Ins. Co.*, 1929 WL 1632 (Tenn. Ct. App. 1929). In *Wheelock*, the plaintiff had an accident insurance policy which excluded injuries not caused by "violent and accidental means." *Ellison*, 267 S.W.2d at 118; *Wheelock*, 1929 WL 1632 at *1. The plaintiff fell in his bathroom, causing a severe hemorrhage. *Ellison*, 267 S.W.2d at 118. The plaintiff then died from loss of blood. *Id*. The plaintiff's doctor testified that, despite the accident, the primary cause of death was "loss of blood from his ulcers or

7

cancerous condition." *Id.*[3] In that situation, where the primary cause of death was identified as the plaintiff's cancer, the exclusionary provision applied, and the insurance company was entitled to a directed verdict. *Wheelock*, 1929 WL 1632 at *6.

Here, the Certificate of Death and the coroner's letter demonstrate that Mr. Upchurch was suffering from several diseases and infirmities at the time of his accident, including metastatic adenoid cystic carcinoma and atherosclerotic cardiovascular disease. *See* Certificate of Death, Doc. No. 1-1, PageID# 15; October 7, 2014, Doc. No. 1-1, PageID# 16. Because metastatic adenoid cystic carcinoma is explicitly listed as the "immediate cause" of Mr. Upchurch's death, the cases the Plaintiff cites do not support his argument. Cancer was not a mere co-morbidity. It was the immediate cause.

### III. PLAINTIFF HAS FAILED TO REBUTT DEFENDANTS' PROOF OF LOSS AND LEGAL ACTIONS ARGUEMENTS.

Plaintiff argues his claims are not barred by the Proof of Loss and Legal Actions provisions of the Policy by making the naked assertion that he "complied" with them. Doc. No. 40, PageID# 332, 335. He supports this claim with unsubstantiated allegations that are not in the pleadings. Some even directly contradict Defendants' supported pleadings. The case law is clear and Plaintiff even admits that allegations or facts outside the pleadings may not be considered. Doc. No. 40, PageID# 331; *See Hsu*, 213 F. Supp. 3d at 1280; *Winget*, 537 F.3d at 576.

Although not mentioned in the Complaint or Amended Complaint, Plaintiff generally alleges without any support that he complied with the Proof of Loss and Legal Actions provisions

---

[3] Plaintiff states that "[i]n the actual case of cancer as a pre-existing physical condition, there exists no Tennessee case law or even case law within the 6th Circuit on point." Doc. No. 40, PageID# 339. On the contrary, the *Wheelock* case involved cancer as a pre-existing physical condition. *See generally*, *Wheelock*, 1929 WL 1632 (Tenn. Ct. App. 1929). *Wheelock* is cited in the *Ellison* case that Plaintiff cites in his Response. *See Ellison*, 267 S.W.2d at 118.

8

because "he or his agent attempted multiple times to perform under the terms of the contract with no reply or response from Defendants", placing him "in an administrative and communication purgatory," and "instituted the current action as soon as reasonably practicable" after the incapacity of Mr. Upchurch's wife. Doc. No. 40, PageID# 335, 333.

As indicated above, none of these allegations are in the Complaint or Amended Complaint, *see generally* Doc. Nos. 1-1 & 29, and, therefore, cannot be considered in response to Defendants' Motion. As such, Plaintiff has failed to rebut Defendants' argument that Plaintiff did not comply with the Proof of Loss and Legal Actions provisions.

Moreover, Plaintiff's allegations that "he or his agent attempted multiple times to perform under the terms of the contract with no reply or response from Defendants," placing "plaintiff in an administrative and communication purgatory" are not only outside the pleadings but also incorrect and in direct contradiction to the pleadings. Mr. Upchurch's claim file, which is attached to Defendants' Answers to Plaintiff's Amended Complaint, clearly shows that Plaintiff did not initiate the processing for the claim of accidental death insurance benefits by submitting a claim form to Defendants until four years after Mr. Upchurch's death on November 10, 2018. *See* Claim Form attached as Exhibit B to LINA's Answer to Plaintiff's Am. Compl. (hereinafter referred to as "Claim Form"), Doc. No. 32-2, PageID# 238-239. Thereafter, Defendants' third-party administrator sent three requests for information to Mr. Upchurch's family and two requests for information to Mr. Upchurch's counsel, and no one responded to these five letters. Doc. No. 32-2, PageID# 286-290. Thus, it is clear that Plaintiff not Defendants failed to respond and keep the claim active. Plaintiff is not entitled to create inaccurate facts that directly contradict the pleadings to preserve his claims from dismissal. "Unsupported allegations cannot survive a motion to

9

dismiss." *See Meyer v. CitiMortgage, Inc.*, 2012 U.S. Dist. LEXIS 19548, at *25 (E.D. Mich. Feb. 16, 2012) (citing *Iqbal*, 129 S. Ct. at 1949)).

The pleadings are clear that Plaintiff's claims should be dismissed under both the Legal Actions and Proof of Loss provisions because Plaintiff failed to file the present lawsuit within 3 years and 90 days of Mr. Upchurch's death as required by the Legal Actions provision and also waited nearly four years to provide proof of loss, which he was required to provide within 90 days under the Proof of Loss provision. Plaintiff has not rebutted these claims. Neither the Complaint nor the Amended Complaint includes an allegation regarding why Mr. Upchurch's relatives did not submit proof of loss within this time period or why they submitted proof as soon as reasonably possible. *See generally*, Compl. & Am. Compl., Doc. Nos. 1-1 & 25. Although in his Response, he generally claims he submitted proof as soon as reasonably possible, even if these allegations were included in the Complaint and could be considered, without any sort of timeline or details, it is unclear even under the most liberal view of the facts how waiting over four years to file proof of loss could be considered as soon as reasonably possible. Plaintiff's claims should be dismissed.

## IV. PLAINTIFF HAS FAILED TO REBUT DEFENDANTS' ARGUMENT THAT HIS CLAIM IS PREMATURE WITH ALLEGATIONS IN THE PLEADINGS.

Plaintiff attempts to save his claims from being held premature with incorrect and unsupported allegations outside the pleadings. Plaintiff's claim should be dismissed because Defendants did not breach Mr. Upchurch's contract or engage in deceptive trade practices since Defendants' third-party administrator never made a decision on Plaintiff's claim. *See* Claim File, Doc. No. 32-2, PageID# 287-290. The third-party administrator, AGIA, closed the claim without a decision because Mr. Upchurch's relatives and their counsel failed to respond to AGIA, and, therefore, AGIA did not receive the necessary documentation requested to review the claim. *Id*.

Instead of providing AGIA the information it needed and going through the claims process, Plaintiff filed the present lawsuit. *Id.*; *see generally* Compl., Doc. No. 1-1.

Plaintiff incorrectly states that these facts should not be considered because they are not in the pleadings and asserts, they are "all news to Plaintiff." Doc. No. 40, PageID# 333. Plaintiff is mistaken. These facts are plainly set forth in Defendants' Answers and all the correspondence he and his counsel received in response to his claim, which also are attached to their Answers to Plaintiff's Amended Complaint. In both LINA's Answers to Plaintiff's Complaint and Amended Complaint[4], LINA explicitly stated "The third-party administrator, AGIA, closed the claim without a decision because AGIA did not receive the necessary documentation requested from Plaintiff to review the claim." Doc. No. 11, PageID# 60 & Doc. No. 32, PageID# 220-221. LINA similarly advised in its Fourteenth Defense in its Answer to the Amended Complaint that "Plaintiff's claims are premature because Defendant's third-party administrator never reached a decision on Plaintiff's claim for accidental death insurance benefits because Mr. Upchurch's family and counsel failed to respond to Defendants' third-party administrator's communications and, therefore, did not receive the necessary documentation requested from Plaintiff to review the claim." Doc. No. 32, PageID # 224. Defendants further attached Mr. Upchurch's claim file as Exhibit B to their Answers to Plaintiff's Amended Complaint. Doc. Nos. 31-2 & 32-2. All of the correspondence in the claim file to Mr. Upchurch's relatives and their counsel regarding his claim explicitly states that the claim is administered by AGIA, Inc. Doc. No. 32-2, PageID# 286-290. These facts are in the pleadings and should be considered.

---

[4] NRA's Answer to Amended Complaint contains similar language. Doc. No. 31, PageID# 151-152.

11

Plaintiff further attempts to save his claim from being held premature by arguing "he or his agent attempted multiple times to perform under the terms of the contract with no reply or response from Defendants," placing "plaintiff in an administrative and communication purgatory". Doc. No. 40, PageID# 335, 333. As discussed above, these allegations should be disregarded because they are outside the pleadings and directly contradict Mr. Upchurch's claim file, which is in the pleadings. The claim file clearly shows AGIA sent Mr. Upchurch's relatives and counsel five different requests for information, and no one responded to the requests. Doc. No. 32-2, PageID# 286-290. It was Plaintiff not Defendants who failed to respond and keep the claim active. Plaintiff has not rebutted Defendants' argument that his claim is premature, and, therefore, his claims should be dismissed.

## V. PLAINTIFF'S TCPA CLAIM IS TIME-BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

Plaintiff asserts that his TCPA claim is not time-barred by the one-year statute of limitations. Doc. No. 40, PageID# 334-335. Without any support, Plaintiff alleges Defendants should have known about Plaintiff's cancer diagnosis when he applied for the Policy because Defendants allegedly had access to Plaintiff's medical history. *Id.* Based on this allegation (which is ***not*** in the Complaint), Plaintiff argues Defendants' approval of the application and subsequent acceptance of premium payments constitute fraud because Defendants "[knew] that it could escape having to perform because [Mr. Upchurch] would likely die of cancer." *Id.* Plaintiff states he did not discover this alleged conduct "until right before bringing suit," *id.*, implying that the statute of limitations was tolled by Defendants' alleged fraud until shortly before this lawsuit was filed.

First, these allegations are not included in the Complaint, and cannot be considered in response to Defendants' Motion. *See Hsu.*, 213 F. Supp. 3d at 1280; *Winget*, 537 F.3d at 576.

12

Second, as indicated above, Defendants never made a decision on Plaintiff's claim and, therefore, could not have committed fraud. Doc. No. 32-2, PageID# 286-290. Defendants did not argue that Plaintiff's claim was barred by the provisions in the Policy until after Plaintiff filed this lawsuit.

Third, these allegations are nothing more than unsupported conjecture, which Defendants deny. Plaintiff presents no proof that Defendants knew he had cancer or how Defendants could have possibly known that Mr. Upchurch would die of cancer. Mr. Upchurch chose to purchase an accidental death insurance policy with full knowledge of his medical history and the terms and conditions of the Policy. Even if Defendants had known about Plaintiff's medical history, it was not required to deny his application because of this history.

Furthermore, the allegation that Defendants committed fraud by accepting Mr. Upchurch's payments (which also is not included in the Complaint) is irrelevant. "Fraud, standing alone, does not toll the statute of limitations; it is the concealment of the [claim] that tolls the procedural bar." *In re Estate of Davis*, 308 S.W.3d 832, 842 (Tenn. 2010). Plaintiff has ***not alleged anywhere*** that Defendants concealed Plaintiff's cause of action, and his Response fails to rebut Defendants' argument that the TCPA claim must be dismissed because it is time-barred.

## VI. CONCLUSION

Plaintiff's claims against Defendants should be dismissed with prejudice because Plaintiff's claims are premature and barred numerous, unambiguous provisions in the Policy. Additionally, Plaintiff's TCPA claim is time barred by Rule 8 of the FRCP and the statute of limitations.

Respectfully submitted,

**ROBINSON, SMITH & WELLS, PLLC**

By: <u>s/Marcie K. Bradley</u>
Marcie K. Bradley, #028222
633 Chestnut Street, Suite 700
Chattanooga, TN 37450-1801
(423) 665-9529
mbradley@rswlaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2020, a copy of the foregoing Reply in Support of Motion to Dismiss was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

R. Wayne Culbertson, Esq.
Joseph W. McMurray, Esq.
119 W. Market Street
Kingsport, Tennessee 37660

**ROBINSON, SMITH & WELLS, PLLC**

By: <u>s/Marcie Kiggans Bradley</u>